# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNETTE LEE IMBODEN, | CASE NO. 1:08-cv-01511-AWI-SKO PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANTS' MOTION TO DISMISS BE DENIED |
| v. | |
| TINA HORNBEAK, et al., | OBJECTIONS DUE WITHIN 30 DAYS |
| Defendants. | |

Plaintiff Annette Lee Imboden ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. On March 15, 2010, Defendants filed a motion to dismiss on the grounds that Plaintiff fails to state a claim and failed to exhaust her administrative remedies prior to filing suit. (Doc. #20.) Plaintiff filed an opposition to Defendants' motion to dismiss on May 10, 2010. (Doc. #24.) Defendants filed a reply to Plaintiff's opposition on May 17, 2010. (Doc. #25.) For the reasons set forth below, the Court will recommend that Defendants' motion to dismiss be denied.

**I.    Background**

   **A.    Plaintiff's Complaint**

This action proceeds on Plaintiff's first amended complaint filed on April 23, 2009. (Doc. #13.)  Plaintiff's complaint named Dr. S. Schulte (senior psychologist), Dr. Souza (staff psychologist), Lt. Scott (program lieutenant), and R.A. Ferguson (correctional officer) as defendants. Plaintiff claims that Schulte, Souza, Scott, and Ferguson violated Plaintiff's rights under the Eighth

///

1  Amendment. Plaintiff claims that Defendants were deliberately indifferent toward threats of
2  violence against Plaintiff from other inmates.

3  Plaintiff claims that she was savagely beaten by four of her roommates at Valley State Prison
4  for Women. Plaintiff was attacked by inmates B. Moreno, R. Savala, M. Salazar, and S. Pelayal
5  during "institutional count" while the inmates were locked in their room. (Am. Compl. 3, ECF No.
6  13.) Plaintiff claims that she returned to her room to be counted and Defendant Ferguson opened
7  the door to let her in. When the door was opened, inmates Moreno and Savala exited the room
8  visibly drunk and angry. Moreno and Savala approached the door of another inmate and began
9  pounding on the door and threatening the inmate inside. Another correctional officer escorted
10 Moreno and Savala back to their room and Ferguson let them back in. Plaintiff complains that
11 Ferguson failed to place Moreno and Savala in restraints and made no attempt to "de-escalate their
12 agitated state." (Am. Compl. 4:23-24, ECF No. 13.)

13 Within 30 to 60 seconds after Ferguson let Moreno and Savala back into their room, Moreno
14 and Savala began attacking Plaintiff. Pelaya and Salazar joined in on the attack. The attack lasted
15 for approximately 30 minutes. The attack was briefly interrupted when Defendant Ferguson
16 announced count time and counted the inmates in the room. In order to hide the incident, Plaintiff
17 was rolled into her bunk and the attackers covered Plaintiff with a sheet. Plaintiff complains that
18 Ferguson failed to properly inspect the room because he should have required the inmates to sit on
19 their bunks to be counted. Ferguson counted Plaintiff while she was lying in a bunk covered with
20 a sheet and as a result did not notice that Plaintiff had been beaten. Ferguson moved on down the
21 hall and the four attackers resumed beating Plaintiff. Plaintiff eventually cried out for help and was
22 heard by correctional officer Johns. Ferguson and another correctional officer then arrived and
23 Plaintiff was transported to a hospital.

24 Plaintiff claims that Defendant Ferguson deliberately ignored signs that Plaintiff was at risk.
25 Plaintiff claims Ferguson was aware that two of the attackers, Moreno and Savala, were homosexual
26 partners whose "aggressive behavior was heightened in the presence of each other." (Am. Compl.
27 7:8-13, ECF No. 13.) Allegedly, Ferguson was also aware that Moreno and Savala were violent
28 predators. Plaintiff alleges that there were eight inmates housed in the same room as Plaintiff and

2

the four attackers had a history of violently abusing the other four roommates. Plaintiff claims that one roommate, inmate Morales, had been attacked by the same four attackers four days earlier. Plaintiff complains that Ferguson failed to properly investigate the attack to determine the identity of the attackers and take steps to protect Plaintiff from future attacks. Plaintiff also complains that Ferguson deliberately ignored the risk of harm by allowing Moreno and Savala to enter the room unrestrained when they were clearly intoxicated and exhibited violent behavior. Plaintiff also complains that Ferguson failed to properly perform count, prolonging the attack.

Plaintiff alleges that Defendant Scott is the "Program Lieutenant of Delta Yard where Plaintiff was housed" and had been repeatedly summoned to Plaintiff's housing unit in response to violent incidents involving inmates Savala and Moreno. Plaintiff complains that Scott failed to separate Savala and Moreno and thereby "allowed their reign of abuse to continue." (Am. Compl. 9:23-27, ECF No. 13.) Plaintiff contends that Scott developed a friendship with Savala and tolerated her violent behavior and homosexual relationship with Moreno. On one occasion, after Scott was called to address Savala and Moreno's violent behavior, Scott allegedly stated, "I'm getting sick of always being called to this room. Handle your business." (Am. Compl. 10:15-18.) Plaintiff complains that Scott's statement is commonly understood in prison parlance as instructing victims such as Plaintiff to fight and defend themselves.

Plaintiff further alleges that two weeks before she was attacked, one of Plaintiff's roommates informed Defendant Souza, a staff psychologist, about Moreno, Savala, Pelaya, and Salazar's "heightened physical violence, threats, and constant aggressive behavior." (Am. Compl. 11:4-8, ECF No. 13.) Plaintiff's roommate, who had been injured by Moreno and Savala in an earlier incident, showed her injuries to Souza and asked for help. Souza informed her that Souza would report the incident to her supervisor, Defendant Schulte. Souza reported the incident to Schulte. However, Plaintiff complains that Schulte was about to begin a two-week vacation and told Souza that the issue would be dealt with after she returned from vacation. Plaintiff complains that Souza failed to inform any other prison officials about the threat and as a result, Plaintiff was attacked while Schulte was on vacation.

///

1   Plaintiff alleges that Defendant Schulte is the senior psychologist at Valley State Prison for
2 Women. Plaintiff complains that Schulte was made aware of the risk of violence against Plaintiff
3 and failed to address the situation in a prompt manner. Instead, Schulte went on vacation for two
4 weeks with the intention of addressing the situation after she returned, causing Plaintiff to be
5 attacked while she was away.

6   **B.   Defendants' Motion to Dismiss**

7   Defendants argue that they are entitled to dismissal under Federal Rule of Civil Procedure
8 12(b)(6) because Plaintiff fails to state a claim on which relief can be granted. Defendants also argue
9 that Plaintiff failed to exhaust her administrative remedies prior to filing suit, as required by the
10 Prison Litigation Reform Act ("PLRA").

11   Defendants argue that Plaintiff fails to state a claim because Plaintiff's complaint fails to
12 allege that Defendants "were aware of a specific, impending, and substantial threat to [Plaintiff's]
13 safety." (Defs.' Notice of Mot. and Mot. to Dismiss; Mem. of P. & A. 5:10-12, ECF No. 20.)
14 Defendants contend that awareness of a mere possibility of violence or the occurrence of a random
15 act of violence is not sufficient to impose liability on Defendants. Defendants argue that Plaintiff's
16 Eighth Amendment rights were not violated when they failed to respond to Plaintiff's "[g]eneralized
17 complaints, even about an inmate or group of inmates known to be violent." (Mot. to Dismiss 5:18-
18 19, ECF No. 20.)

19   Defendants also argue that Plaintiff failed to exhaust her administrative remedies prior to
20 filing suit, as required by the PLRA. Defendants argue that in order to effectively exhaust her
21 administrative remedies, Plaintiff must file an administrative appeal and proceed through an initial
22 informal level and three formal levels of review, culminating in a Director's Level decision.
23 Defendants allege that Plaintiff filed an administrative appeal regarding the attack, but did not
24 proceed past the First Level of review. Defendants also argue that the appeal Plaintiff filed would
25 not have exhausted her administrative remedies for the claims being brought in this action because
26 the appeal complained about the fact "that the Investigative Services Unit was not contacted to
27 document the evidence and that Plaintiff was feeling ignored." (Mot. to Dismiss 8:21-23, ECF
28 ///

4

No. 20.) Defendants contend that Plaintiff did not give the prison an opportunity to administratively resolve the issues raised in her claims prior to filing this lawsuit.

### C.     Plaintiff's Opposition

Plaintiff's opposition reiterates the same facts alleged in her complaint. Plaintiff argues that the facts alleged are sufficient to state a claim under the Eighth Amendment. Plaintiff contends that Defendants' failure to protect her constituted deliberate indifference in violation of the Eighth Amendment because Defendants were aware of a serious threat to Plaintiff's safety.

Plaintiff also contends that she exhausted her administrative remedies prior to filing suit. Plaintiff admits that she did not pursue her appeal to the final Director's Level of review. However, Plaintiff contends that she exhausted all of her administrative remedies because her appeal was "partially granted" at the First Level of review and no further remedies were available. Plaintiff contends that the only aspect of her administrative appeal that was not granted concerned Plaintiff's complaint that Lt. J. Anderson did not treat her with respect. Plaintiff contends that the issue has nothing to do with this lawsuit and that she exhausted all the remedies available with respect to the claims being brought in this action. Plaintiff contends that the only remedy she requested that was relevant to her claims was her request that prison officials conduct an investigation into the attack. Her request for an investigation was granted and no further relief was available.

### D.     Defendants' Reply

Defendants reiterate that Plaintiff must allege that Defendants knew of and disregarded a specific threat to Plaintiff's safety in order to state a claim under the Eighth Amendment. Defendants contend that informing Defendants about the history of violence involving Plaintiff's roommates is not specific enough to constitute deliberate indifference.

Defendants further reiterate that Plaintiff failed to exhaust her administrative remedies because her administrative appeal did not complain about the issues raised in this lawsuit. The appeal concerned the investigation of the attack and did not concern Defendants' failure to protect Plaintiff.

///

///

II.     **Discussion**

    A.     **Failure to State a Claim**

          1.     **Federal Rule of Civil Procedure 12(b)(6) Standards**

Defendants contend that they are entitled to dismissal under Federal Rule of Civil Procedure 12(b)(6) because Plaintiff's first amended complaint fails to state a claim. To survive a motion to dismiss for failure to state a claim, a complaint must meet the pleading standard set by Federal Rule of Civil Procedure 8. Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555).

          2.     **Eighth Amendment Standards**

Plaintiff claims that Defendants violated her rights under the Eighth Amendment. The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity and decency.'" Estelle v. Gamble, 429 U.S. 97, 102 (1976) (quoting Jackson v. Bishop, 404 F.2d 571, 579 (8th Cir. 1968)). A prison official violates the Eighth Amendment only when two requirements are met: (1) the objective requirement that the deprivation is "sufficiently serious," and (2) the subjective requirement that the prison official has a "sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).

///

The objective requirement that the deprivation be "sufficiently serious" is met where the prison official's act or omission results in the denial of "the minimal civilized measure of life's necessities." Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). The subjective requirement that the prison official has a "sufficiently culpable state of mind" is met where the prison official acts with "deliberate indifference" to inmate health or safety. Id. (quoting Wilson, 501 U.S. at 302-303). A prison official acts with deliberate indifference when he or she "knows of and disregards an excessive risk to inmate health or safety." Id. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

### 3. Plaintiff States a Cognizable Eighth Amendment Claim

Plaintiff claims that Defendants violated her Eighth Amendment rights through their deliberate indifference toward a serious threat to her safety. "Prison officials have a duty to take reasonable steps to protect inmates from physical abuse." Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982). To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent" to serious threats to the inmate's safety. See Farmer v. Brennan, 511 U.S. 825, 834 (1994).

Defendants argue that Plaintiff's allegations do not amount to an Eighth Amendment violation because Plaintiff failed to allege that Defendants were aware of a specific threat of harm against her. Defendants contend that the risk of harm was not substantial enough to constitute deliberate indifference. While it is true that allegations of a vague threat of harm may not be sufficient to plausibly support the conclusion that a prison official had actual knowledge of a substantial risk of harm, see Dale v. Poston, 548 F.3d 563, 569 (7th Cir. 2008), Plaintiff had identified a sufficiently specific threat of harm. Plaintiff identified the potential assailants as Moreno and Savala, and Defendants were aware of recent incidents where Moreno and Savala violently attacked their roommates (which included Plaintiff). Plaintiff has alleged facts that plausibly support the conclusion that Defendants were aware of a substantial risk of serious harm to Plaintiff. Although Plaintiff did not provide Defendants with the specific time or place where she would be attacked, the Court finds that threat was sufficiently tangible and specific to form the basis of an

Eighth Amendment claim.

Defendant Ferguson was aware that Moreno and Savala were violent toward other inmates and was specifically aware of incidents where Moreno and Savala attacked their roommates. On the day of the attack, Ferguson noticed that Moreno and Savala were visibly intoxicated and belligerent. Despite their intoxicated and belligerent state, Ferguson locked Plaintiff in a room with them without imposing restraints and supervision. A fact finder could reasonably conclude that Ferguson's actions were deliberately indifferent.

Defendant Scott was also aware of Moreno and Savala's violent tendencies. Scott was repeatedly asked to investigate violent incidents where Moreno and Savala attacked their roommates. Scott did nothing to prevent future incidents and instead told Plaintiff and her roommates to protect themselves. Scott's failure to protect Plaintiff can be considered deliberately indifferent. Similarly, Defendants Souza and Schulte were aware that Plaintiff and her roommates were in danger but chose to ignore the issue until Schulte returned from vacation after two weeks. Plaintiff may be able to present sufficient evidence on the facts alleged to support the conclusion that the delay constituted deliberate indifference.

Here, Plaintiff identified a risk to her safety that was serious enough to meet the objective requirement of an Eighth Amendment violation. This case is distinguishable from cases where a prisoner informs prison officials about a generalized fear about the safety of a prison as a whole. Here, Plaintiff was not asking Defendants to protect her from the entire prison population; Plaintiff requested only that Defendants protect her from Moreno and Savala. Plaintiff alleges facts that plausibly support the conclusion that Defendants could have done something to protect Plaintiff from the risk of harm. Thus, Plaintiff states a cognizable claim against Defendants for the violation of her rights under the Eighth Amendment.

**B.    Failure to Exhaust**

Defendants contend that Plaintiff failed to exhaust her administrative remedies prior to filing suit. "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The section 1997e(a)

exhaustion requirement applies to all prisoner suits relating to prison life. Porter v. Nussle, 435 U.S. 516, 532 (2002). The PLRA exhaustion requirement requires proper exhaustion. Woodford v. Ngo, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules. . . ." Id. at 90-91. The proper exhaustion requirement serves two important purposes: 1) it gives an agency the opportunity to correct its own mistakes before it is brought into federal court and discourages disregard of the agency's procedures; and 2) it promotes efficiency because claims can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court. Id. at 89.

Prisoners must complete the prison's administrative process, regardless of the relief sought by the prisoner and regardless of the relief offered by the process, as long as the administrative process can provide some sort of relief on the complaint stated. Booth v. Churner, 532 U.S. 731, 741 (2001). Thus, prisoners cannot evade the exhaustion requirement by limiting their request for relief to forms of relief that are not offered through administrative grievance mechanisms. Id. (prisoners cannot skip administrative process by simply limiting prayers for relief to money damages not offered through administrative grievance mechanisms). Further, prisoners may not cease pursuing administrative appeals simply because the appeal process does not offer the form of relief that they seek. "All 'available' remedies must now be exhausted; those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.'" Porter, 534 U.S. at 524 (citing Booth v. Churner, 532 U.S. 731, 739 n.5 (2001)). However, "a prisoner need not press on to exhaust further levels of review once he has either received all 'available' remedies at an intermediate level of review or been reliably informed by an administrator that no remedies are available." Brown v. Valoff, 422 F.3d 926 (9th Cir. 2005).

Section 1997e(a) does not impose a pleading requirement; it is an affirmative defense which Defendants have the burden of raising and proving. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). The failure to exhaust non-judicial administrative remedies that are not jurisdictional is subject to an unenumerated Rule 12(b) motion, rather than a summary judgment motion. Id. at 1119 (citing Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368 (9th Cir. 1998) (per curium)). In deciding a motion to dismiss for failure to exhaust administrative remedies, the

9

1  court may look beyond the pleadings and decide disputed issues of fact. Id. at 1119-20. If the court
2  concludes that the prisoner has failed to exhaust administrative remedies, the proper remedy is
3  dismissal without prejudice. Id.

4  Defendants bear the burden of raising and proving the exhaustion defense. Thus, Defendants
5  must prove each element of the exhaustion defense. The most basic element of the exhaustion
6  defense is whether or not further remedies were "available" to Plaintiff. Notably, Defendants have
7  not identified any remedy that remained available to Plaintiff. Defendants only established that
8  Plaintiff did not pursue an appeal to the Director's Level and did not file an appeal that concerned
9  Defendants' failure to protect her. However, the administrative appeal process is not in and of itself
10 a "remedy"--it is a means of obtaining a remedy. Thus, Plaintiff's failure to pursue her appeal to the
11 Director's Level or her failure to file an appeal that specifically addressed Defendants' misconduct
12 is irrelevant if there was no remedy available to her through the administrative appeal process. It is
13 Defendants' burden to demonstrate that there was a remedy available.

14 Plaintiff argues that there was no remedy available because all the remedies that she desired
15 from the administrative remedy process had already been granted. Plaintiff alleged that after she was
16 attacked, the prison conducted an investigation and collected evidence regarding the attack. (Am.
17 Compl. 6:3-7, ECF No. 13.) Plaintiff was given medical treatment at an outside hospital. (Am.
18 Compl. 6:1-3, ECF No. 13.) The inmates who attacked her were placed in administrative
19 segregation. (Am. Compl. 6:9-10, ECF No. 13.) The inmates were also charged and found guilty
20 of attempted murder through the prison administrative disciplinary system. (Am. Compl. 6:10-12,
21 ECF No. 13.) They were also criminally charged. (Am. Compl. 6:12-14, ECF No. 13.)

22 The Court notes that whether or not Plaintiff actually desired the remedy is irrelevant. The
23 relevant question is whether a remedy was available--it does not matter whether Plaintiff wanted it
24 or not. See Booth, 532 U.S. at 741. Here, Defendants have failed to identify any available
25 remedies, and the Court will not speculate as to whether any exist. Defendants have failed to carry
26 their burden of proving the exhaustion defense. Thus, the Court will recommend that Defendants'
27 motion to dismiss be denied.

28 ///

### III. Conclusion and Recommendation

The Court finds that Plaintiff's first amended complaint states a cognizable claim for relief against Defendants for the violation of Plaintiff's Eighth Amendment rights. The Court further finds that Defendants failed to bear the burden of demonstrating that Plaintiff failed to exhaust her administrative remedies prior to filing suit.

Accordingly, it is HEREBY RECOMMENDED that Defendants' motion to dismiss, filed on March 15, 2010, be DENIED.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten (10) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   July 30, 2010**                             /s/ Sheila K. Oberto
                                                              UNITED STATES MAGISTRATE JUDGE